# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| GILARIME MUELLER,<br><br>Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | No. 4:11-cv-00309-JAJ<br><br><br><br>**INITIAL REVIEW ORDER** |

This matter comes before the Court pursuant to Petitioner Gilarime Mueller's ("Mueller") Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence filed on June 30, 2011. [Dkt. No. 1.]

On November 20, 2008, a jury found Mueller guilty on two counts after a three-day trial. *See* 3:08-cr-00054. The Court sentenced Mueller on April 2, 2009, to a term of incarceration of 380 months on each of Counts One and Two, to be served concurrently. Mueller filed a notice of appeal on April 7, 2009. The Eighth Circuit Court of Appeals affirmed the district court on March 30, 2010, and a mandate was issued on April 29, 2010.

On April 1, 2010, Mueller filed a motion for relief from judgment with the Court, which the Court construed as a § 2255 petition. *See* 4:10-cv-00148. The Court denied the motion on initial review and denied a Certificate of Appealability on April 13, 2010, and February 16, 2011, respectively.

Mueller filed a § 2255 petition on June 30, 2011. The Court dismissed the petition on the basis that it was a second, or successive, petition. Mueller filed a motion for reconsideration of the initial review order on July 22, 2011, contending that it was not a second, or successive, petition. [Dkt. No. 4.] The Court grants Mueller's motion for reconsideration.

Pursuant to Rule 4 of the Rules Governing § 2255 Proceedings, the Court conducts

the following initial review of the petition filed on June 30, 2011. For the following reasons, the Court denies Mueller's § 2255 application. The Court also denies Mueller a Certificate of Appealability pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

On July 16, 2008, a grand jury charged Mueller in a two-count indictment.[1] Count One charged him with conspiracy to distribute at least 50 grams of cocaine base, pursuant to 21 U.S.C. §§ 846 and 841(b)(1)(A). Court Two charged him with possession with intent to distribute at least 5 grams of a mixture or substance containing cocaine base on or about May 2, 2008, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2.

Law enforcement officers investigated Matthew Canady and Mueller for the distribution of large quantities of crack cocaine in the Quad Cities area. Cooperating witnesses explained that several individuals would pool their money from January 2007 to May 2008, in order to buy crack cocaine or powder cocaine from dealers in Chicago. Witnesses explained that Mueller participated by contributing money, by going on trips, by assisting in cooking up the crack cocaine, and by receiving crack cocaine from Mueller for the purpose of distribution in the Quad Cities.

On May 2, 2008, law enforcement officers conducted surveillance on Canady and arranged to make a controlled purchase of cocaine base from Canady. Officers observed Canady at the Scott Community College parking lot, saw him enter a tan GMC Denali (registered to Nicky Hill and known to be used by Canady), and drive to 2319 North Linwood Avenue, Davenport, Iowa. Officers then observed Canady, Hill, and two children exit the Linwood residence, enter a silver Pontiac Grand Prix, drive to Enterprise Rent-A-Car on Brady Street in Davenport, Iowa, and leave with a Volkswagen Passat rental vehicle. Canady and Hill went back to the Linwood residence and Canady moved the Denali into the

---

[1] The Court refers to documents from Mueller's criminal case, No. 3:08-cr-00054.

garage.

Officers had a confidential informant contact Canady about purchasing crack. Canady informed the confidential informant that he would have crack cocaine to sell in about one to one-half hours, or by the next day.

Canady then left his residence holding a blue plastic bag and drove the Passat to 5372 North Linwood Avenue; this residence was later identified as Mueller's home. Canady entered the residence carrying the blue plastic bag and other individuals also arrived at the house. Approximately an hour and a half later, Canady and Mario Williams left the residence and drove off in the Passat. Officers continued to conduct surveillance at the 5372 North Linwood residence and observed a black male exit the residence with a white trash bag that he placed in a garbage can. Officers were advised that the Passat was being pursued and the decision was made to secure the residence. Inside the residence, officers found and secured Jeremy Canady, Mueller, and Renata Wilson. Officers also retrieved the trash bag in the garbage can and brought it back into the house.

Officers observed Canady drive over to the confidential informant's residence, but the confidential informant did not answer the door. Officers believed Canady had crack cocaine in his vehicle and attempted a traffic stop. The Passat evaded officers and a high-speed chase ensued. After the search was called off in the area of 46th and Pine Street in Davenport, Iowa, citizens directed officers to the roof of an abandoned gas station. Officers received information that citizens had observed a male subject exit Canady's Passat and throw something on top of the abandoned gas station before running away. The Fire Department was able to recover two plastic yellow bags on the roof containing 39.57 grams of crack cocaine.

A search warrant was then executed at the 5372 North Linwood residence. Officers seized the following items: four cellular telephones; documents in Mueller's name; $16,980 in cash (located in a pillow case in the upstairs master bedroom); a brown pyrex dish in a kitchen cupboard; a measuring cup in a drying rack near the kitchen sink; an open box of

baking soda; several yellow plastic bags in a kitchen drawer; and a digital scale. The trash bag that had earlier been thrown out contained the blue bag thought to be observed earlier in the day and a yellow plastic bag with part of it torn off. The yellow bag was consistent with the bag recovered from the roof of the gas station.

A separate search conducted at the 2319 North Linwood Avenue residence resulted in the seizure of the following items: a GMC Denali; $1,000 cash; a .45 caliber Springfield Armory semi-automatic handgun; ammunition; documents; three digital scales; keys to a storage unit; and packaging material.

A three-day jury trial commenced on November 18, 2008. Nineteen witnesses testified at trial, including co-conspirators, cooperating witnesses, and law enforcement officers. On November 20, 2008, the jury found Mueller guilty of conspiracy to distribute more than fifty grams of crack cocaine and possession with intent to distribute more than five grams of crack cocaine. The Probation Office determined that Mueller had a total offense level of 38 and a criminal history category of V, with a guideline imprisonment range of 360 months to life. On April 2, 2009, the Court sentenced Mueller to 380 months on Counts One and Two, to run concurrently.

Mueller filed a notice of appeal on April 7, 2009. The Eighth Circuit Court of Appeals affirmed the district court on March 30, 2010, and a mandate was issued on April 29, 2010. A criminal defendant's conviction becomes "final" for the purposes of a section 2255 petition ninety days after a circuit court issues its ruling on direct appeal. *See United States v. Hernandez*, 436 F.3d 851, 856 (8th Cir. 2006); 28 U.S.C. § 2255(f)(1). Mueller's petition is timely because it was filed less than one year and ninety days after the Eighth Circuit issued mandate.

Mueller claims that his counsel was ineffective for a myriad of reasons: (1) counsel failed to object to government witnesses testifying under plea agreements; (2) counsel failed to raise a minor role reduction argument at sentencing; (3) counsel failed to object to government witnesses testifying pursuant to cooperation agreements; and (4) counsel failed

to present witnesses. Mueller asserts that the cumulative impact of trial counsel's errors requires an evidentiary hearing.

## II. CONCLUSIONS OF LAW

### A. Standards for Relief Pursuant to Section 2255

Title 28, of the United States Code, section 2255, provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground (1) that the sentence was imposed in violation of the Constitution or laws of the United States, or (2) that the court was without jurisdiction to impose such sentence, or (3) that the sentence was in excess of the maximum authorized by law, or (4) is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Section 2255 does not provide a remedy for "all claims errors in conviction and sentencing." *United State v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, § 2255 is intended to redress only "fundamental defect[s] which inherently [result] in a complete miscarriage of justice" and "omission[s] inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962); *see also United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) ("Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised for the first time on direct appeal and, if uncorrected, would result in a complete miscarriage of justice.") (citing *Poor Thunder v. United States*, 810 F.2d 817, 821 (8th Cir. 1987)). A § 2255 claim is a collateral challenge and not interchangeable for a direct appeal, *see United States v. Frady*, 456 U.S. 152, 165 (1982), and an error that could be reversed on direct appeal "will not necessarily support a collateral attack on a final judgment." *Id.*

### B. Ineffective Assistance of Counsel Standard

The Sixth Amendment right to counsel exists "in order to protect the fundamental

right to a fair trial." *Strickland v. Washington*, 466 U.S. 668, 684 (1984). The United States Supreme Court reformulated the *Strickland* test for constitutionally ineffective assistance of counsel in *Lockhart v. Fretwell*:

> [T]he right to effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

506 U.S. 364, 369 (1993) (*quoting U5wnited States v. Cronic*, 466 U.S. 648, 658 (1984)). The Eighth Circuit Court of Appeals applies the *Lockhart* test:

> Counsel is constitutionally ineffective . . when: (1) counsel's representation falls below an objective standard of reasonableness; and (2) the errors are so prejudicial that the adversarial balance between defense and prosecution is upset, and the verdict is rendered suspect.

*English v. United States*, 998 F.2d 609, 613 (8th Cir. 1993) (citing *Lockhart*, 506 U.S. at 364). Where conduct has not prejudiced the movant, the court need not address the reasonableness of that conduct. *United States v. Williams*, 994 F.2d 1287, 1291 (8th Cir. 1993); *Siers v. Weber*, 259 F.3d 969, 984 (8th Cir. 2001) (citing *Strickland*, 466 U.S. at 697) (courts need not reach the effectiveness of counsel if it is determined "that no prejudice resulted from counsel's alleged deficiencies."). To determine whether there is prejudice, the court examines whether the result has been rendered "fundamentally unfair or unreliable" as the result of counsel's performance. *Lockhart*, 506 U.S. at 369. Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural rights to which the law entitles him. *Id.* at 372. Prejudice does not exist unless "there is a reasonable probability that, but for counsel's . . . errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams*, 994 F.2d at 1291.

### 1. Claims Related to Government Witness Testimony

Mueller contends that his attorney was ineffective because he failed to object to the testimony from cooperating witnesses and that the government offered sentence reductions in exchange for testimony.

The Court finds that Mueller's ineffective assistance of counsel argument as to witnesses testifying in the hope of sentence reductions in plea agreements is without merit. *United States v. Brown*, 183 F.3d 740, 742 (8th Cir. 1999) (citing *United States v. Irons*, 53 F.3d 947, 948-49 (8th Cir. 1995) ("[I]it is not unlawful for the Government to promise favors in return for truthful testimony."); *United States v. Albanese*, 195 F.3d 389, 394 (8th Cir. 1999) (Eighth Circuit has "long history" of allowing government to compensate witnesses for their participation in criminal investigations). This claim is summarily dismissed.

The Court also dismisses Mueller's claim that his counsel was ineffective because he failed to object to the testimony of government witnesses who had cooperation agreements. Mueller argues that his counsel did not object when the prosecutor improperly elicited testimony from the witnesses that the plea agreements could be revoked, thus, the jury could reasonably infer that the witnesses were being truthful. Mueller's claim is without merit because the Eighth Circuit has "'repeatedly upheld jury verdicts based solely on the testimony of co-conspirators and cooperating witnesses, noting that it is within the province of the jury to make credibility assessments and resolve conflicting testimony.'" *United States v. Ragland*, 555 F.3d 706, 715 (8th Cir. 2009) (quoting *United States v. Bower*, 484 F.3d 1021, 1026 (8th Cir. 2007)); *cf. United States v. Barrett*, 74 F.3d 167, 168 (8th Cir. 1996) (holding that testimony of three alleged co-conspirators was enough to convict defendant of conspiracy even where there was contradictory testimony and no physical evidence). The admission of plea agreements does not unfairly bolster witness credibility. *United States v. McClellon*, 578 F.3d 846, 859 (8th Cir. 2009) (citing *United States v. Drews*, 877 F.2d 10, 12 (8th Cir. 1989)).

Here, there was far more testimony establishing Mueller's role in the conspiracy than just the four cooperating witnesses. *See United States v. Mueller*, 368 F. App'x 709, 710-11 (8th Cir. 2010) (unpublished) (holding that evidence was sufficient to convict Mueller on both counts). The Court finds that Mueller cannot show conduct falling below the standard required of counsel or prejudice as to claims related to the testimony of government witnesses. *Williams*, 994 F.2d at 1291.

### 2. Minor Role Reduction

Mueller next argues that his counsel was ineffective for failing to raise a minor role reduction at sentencing. Ordinary sentencing guideline issues are not cognizable under § 2255. *Sun Bear v. United States*, --- F.3d ----, 2011 WL 2683183, at *3 (8th Cir. Jul. 12, 2011). Mueller cannot show prejudice because a minor role reduction is not available when a defendant is "deeply involved." *United States v. Mitchell*, 613 F.3d 862, 870 (8th Cir. 2010) (citing *United States v. Bush*, 352 F.3d 1177, 1182 (8th Cir. 2003) ("[M]erely showing the defendant was less culpable than other participants is not enough to entitle the defendant to the adjustment if the defendant was 'deeply involved' in the offense.").

The Presentence Investigation Report ("PSR") shows how Mueller was deeply involved. He was engaged in pooling huge amounts of money to repeatedly buy and sell large quantities of crack and powder cocaine. The PSR also attributed 24 kilograms of cocaine base and 3 kilograms of cocaine powder to Mueller. The Court finds that Mueller has not stated a sufficient claim for prejudice. *Williams*, 994 F.2d at 1291.

### 3. Failure to Present Witness

Finally, Mueller argues that his counsel was ineffective when he failed to call a probation officer who could have established that Mueller was incarcerated during some of the conspiracy. Mueller asserts that he was incarcerated with the Illinois Department of Corrections through January of 2007 and then he was on in-home detention through approximately April of 2007. The Court reviewed the trial transcripts as to when Mueller was alleged to have joined the conspiracy. The prosecutor claimed that Mueller did not join

the conspiracy until Spring 2007 and continued through April 2008.[2]  Four cooperating witnesses also stated that Mueller started in Spring 2007 or "around that time," April 2007 through April 2008, or as late as September and October 2007.[3]  Police officers testified about Mueller's involvement in May 2008.[4]  The Court finds that there were no references in the trial about Mueller's involvement in the conspiracy between January and April 2007.

Mueller cannot demonstrate prejudice resulting from a failure to call the probation officer.  *See Lockhart*, 506 U.S. at 364.  Mueller has not shown how presenting the witness would have otherwise changed the outcome of the trial.  *See Williams*, 994 F.2d at 1291; *Owens v. Dormire*, 198 F.3d 679, 682-83 (8th Cir. 1999) (defendant must show actual prejudice as a result of failure to call a witness).  There was simply no nbeed to present this evidence.[5]

## C. Request for Evidentiary Hearing

Section 2255 requires a hearing for the purposes of determining the issues and making findings of fact with respect thereto.  *See* 28 U.S.C. § 2255.  A hearing is not required where the "motion and the files and records of the case conclusively show" that relief is not available.  *Id.*  Because Mueller fails to show the requisite prejudice resulting from any of his claims, it is clear that relief is unavailable.  Accordingly, a hearing is

---

[2] In his opening argument, the prosecutor stated, "evidence will be submitted to establish that from January of 2007 to approximately May 2d of 2008 that two or more individuals entered into an agreement or understanding to distribute crack cocaine. Second, that during that time period either at the time that agreement was first reached in approximately January of 2007 or at some time during the time period from there to May 2, 2008, the defendant, Gilarime Mueller, knowingly and voluntarily joined in that agreement." Tr. at 9.  In his closing argument, the prosecutor stated, "Gilarime Mueller by at least the spring of 2007 to May 2d of 2008 was assisting in driving up and obtaining the cocaine, he was contributing money, he was assisting in the cooking of the crack cocaine, and he was distributing the crack cocaine." Tr. at 456.

[3] Tr. at 24, 27, 37, 57-58, 67, 92, 362, 409.

[4] Tr. at 208, 226, 420, 435.

[5] And, of course, it is not terribly attractive to present a defense based on being in prison.

unnecessary.

### IV. CERTIFICATE OF APPEALABILITY

Before a petitioner can appeal to the court of appeals from a final order in a habeas corpus proceeding, the district court judge must issue a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). Such certificate may be issued if "the applicant has made a substantial showing of the denial of a constitutional right," *id.* § 2253(c)(2), and indicates "which specific issue or issues satisfy the [substantial] showing." *Id.* § 2253(c)(3).

To meet the "substantial showing" standard, the petitioner must demonstrate that a reasonable jurist would find the district court ruling on the constitutional claim debatable or wrong. *Winfield v. Roper*, 460 F.3d 1026, 1040 (8th Cir. 2006) (citing *Tennard v. Dretke,* 542 U.S. 274, 276, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004)); *see also Randolph v. Kemna*, 276 F.3d 401, 403 (8th Cir. 2002) ("the petitioner must 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further.'" (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.1, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)) (alteration in original)). A "substantial showing" must be made for each issue presented. *See Parkus v. Bowersox*, 157 F.3d 1136, 1140 (8th Cir. 1998). The certificate of appeal will then contain "an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-el v. Cockrellu*, 537 U.S. 322, 336 (2003). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it." *Id.* Thus, a district court may issue a certificate of appeal even if the court is not certain that "the appeal will succeed . . . [because a certificate of appealability] will issue in some instances where there is no certainty of ultimate relief." *Id.* at 336–37 (citing *Slack v. McDaniel*, 539 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)).

Here, Mueller cannot show that reasonable jurists would disagree or debate whether the fact issues presented should have had a different outcome, and whether the fact issues

are adequate to deserve encouragement to proceed further. *See Barefoot*, 463 U.S. at 893 n.4. The Court denies a Certificate of Appealability.

## IV. CONCLUSION

The Court finds that Mueller is not entitled to relief pursuant to 28 U.S.C. § 2255. There has not been a "miscarriage of justice" because none of Mueller's claims support a finding for ineffective assistance of counsel. *Apfel*, 97 F.3d at 1076.

Upon the foregoing,

**IT IS ORDERED** that the Petitioner's Motion for Reconsideration [Dkt. No. 4] is granted.

**IT IS FURTHER ORDERED** that the Petitioner's June 30, 2011 Motion to Vacate, Set Aside, or Correct Sentence [Dkt. No. 1] is dismissed. The Petitioner is denied a Certificate of Appealability. The Clerk of Court is directed to enter judgment in favor of the respondent.

**DATED** this 8th day of August, 2011.

JOHN A. JARVEY
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF IOWA